**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**UNITED STATES OF AMERICA**                                            **PLAINTIFF**

**v.**                             **Case No. 4:18-CR-00454-LPR**

**ANTHONY ATKINS**                                                          **DEFENDANT**

## ORDER

Before the Court is Defendant Anthony Atkins' Motion to Exclude Government's Expert Trial Testimony. (Doc. 67). For the reasons stated below, Mr. Atkins' Motion is DENIED.

On July 23, 2020, the United States filed a Notice of Intent to Offer Expert Trial Testimony from FBI Special Agent Carrie Landau. (Doc. 49). The Government intends to have Agent Landau "testify as an expert on common dynamics that occur in the sex trafficking relationship between a trafficker and a victim." *Id.* at 3. This testimony would include:

1. "[t]he typical means sex traffickers use to target, recruit, manipulate, and maintain victims";

2. "[c]ommon ways that sex traffickers target minors and tactics used to maintain control over the victims' actions and to prevent victims from leaving the relationship";

3. "common reactions of victims of sex trafficking to the abuse[,]" including with law enforcement;

4. "information about the subculture of sex trafficking, including the meaning of certain terms"; and

5. "the use and meaning of certain code words employed" in the commercial sex trade, as well as "the significance of certain items, photographs, business records, and advertisements" in the commercial sex trade.

*Id.* at 3-4. Agent Landau was not involved in the investigation of the Atkins case, and has not been given any information about the case. Her testimony will be explicitly limited to her general

knowledge about sex trafficking as opposed to specific knowledge of this case, the defendant, or the victim.

On July 30, 2020, Mr. Atkins filed the Motion to Exclude Agent Landau's testimony. (Doc. 67). The Motion argued, among other things, that "the anticipated testimony does not satisfy the requirements of Federal Rule of Evidence 702." *Id.* at 1. On August 18, 2020, the Court held a *Daubert* hearing regarding Agent Landau's qualifications as an expert and the admissibility of her expected testimony. (Doc. 92). Combining the arguments from the written motion and the *Daubert* hearing, Defendant objects to Agent Landau's testimony on the following grounds:

- The testimony is irrelevant to any issue in the case. FED. R. EVID. 401.

- The probative value would be substantially outweighed by a danger of unfair prejudice. FED. R. EVID. 403.

- The testimony would not help the trier of fact to understand the evidence or determine a fact in issue. Sex trafficking is not a specialized field outside the ken of a lay person. Also, much of the proposed testimony is not relevant to the specific facts of this case. FED. R. EVID. 702.

- The testimony is not reliable. It is not scientific in nature. It is not based on a reliable method. Agent Landau is not familiar with Arkansas sex trafficking vernacular, and it has not been proven that the vernacular of sex traffickers is universal throughout the country. FED. R. EVID. 702.

I find Agent Landau to be an expert in the fields of sex trafficking and sex trafficking of minors. Her CV and her hearing testimony make clear that her education, training, and experience give her specialized knowledge in those fields. Moreover, after listening to her testimony, evaluating her credentials and experience, and considering the link between the two, I further find that Agent Landau's planned testimony would be reliable.[1]

---

[1] I conclude that Agent Landau's experiences give her sufficient factual data from which to form her expert opinions. At the *Daubert* hearing, Agent Landau testified that she has worked with the FBI for over 17 years, and that she has worked on over 130 sex trafficking cases. She also testified that she has interviewed over 500 victims of sex trafficking, and that about three-quarters of those victims were minors. She has also interviewed approximately 65 sex trafficking suspects.

That her knowledge and planned testimony is not scientific in nature or based on a scientific method is of no moment. The U.S. Supreme Court has held that expert qualifications are not "limited to 'scientific' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). The Supreme Court has also held that an expert may "draw a conclusion from a set of observations based on extensive and specialized experience." *Id.* at 156. Agent Landau has extensive and specialized experience that qualifies her to testify as an expert on sex trafficking crimes, including sex trafficking of minors.

As for the alleged or potential differences in regional vernaculars, Agent Landau testified at the *Daubert* hearing that she had participated in sex trafficking cases or investigations in the South before. She also testified that American sex trafficking jargon does not significantly vary by region. There is no evidence in the record to contradict this. Any potential differences in vernacular (either the vernacular of the general population or the vernacular of sex traffickers) are small enough that they would not undermine the reliability of Agent Landau's testimony regarding sex trafficking terminology. Defense Counsel is free to explore the existence and impact of potential vernacular differences on cross-examination.[2]

I also find that Agent Landau's testimony would be helpful to the trier of fact. The Eighth Circuit has previously approved of expert testimony "regarding the operation of a prostitution ring, including recruitment of prostitutes and the relationship between pimps and prostitutes, and regarding jargon used in such rings." *United States v. Geddes*, 844 F.3d 983, 991 (8th Cir. 2017),

---

[2] At the *Daubert* hearing, Defense Counsel asked several questions about the term "daddy," and Agent Landau testified that she did not know adult women used the term "daddy" to refer to boyfriends or husbands. Defense Counsel then followed up with questions about Agent Landau's experience working in southern states. As best the Court can tell, Defense Counsel's point appears to be that in Arkansas (or in the South) adult women sometimes use the term "daddy" to innocently refer to an intimate male partner. In any event, the Government has made clear that they do not intend to ask Agent Landau about the term "daddy" when she testifies in front of the jury. Defense Counsel did not show that the terms that the Government does intend to ask about have innocent explanations in Arkansas (or the South) that Agent Landau fails to recognize.

quoting *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir. 2001).  This is, essentially, the same subject matter that the United States expects Agent Landau to discuss.  (Doc. 49) at 3-4.  The fact that our case involves (at least directly) only one trafficked minor does not significantly alter the calculus.  There are still issues of specialized jargon, code words, recruitment tactics, and relationship features that are sufficiently unknown to lay persons.  Accordingly, Agent Landau's testimony would be helpful to the trier of fact.

I also find that Agent Landau's testimony would satisfy Rule 401's relevancy requirement.  Agent Landau's testimony about "common dynamics between sex traffickers and their victims," "code words," and other matters will likely shed light on the critical issue in this case: whether Mr. Atkins acted as L.D.'s pimp.  Agent Landau's testimony about the "common reactions of victims of sex trafficking" may also help the jury weigh L.D.'s credibility.

I also conclude that Agent Landau's testimony is more probative than prejudicial, and thus certainly would not run afoul of Rule 403.[3]  Mr. Atkins argues that "the probative value of the expert testimony is low because the facts in this case are easily understood," but the danger of prejudice "is incredibly high and runs the risk of confusing the jury into ameliorating the credibility of the government's key fact witness."  (Doc. 67) at 3.  In my view, this understates the probative value and vastly overstates any potential prejudice of Agent Landau's proposed testimony.  Prostitution and sex trafficking are clandestine by nature, so I do not think it can be assumed that jurors would be familiar with or "easily underst[and]" the sex trafficking industry.  I also am not convinced that Agent Landau's testimony would have an unfair or undue ameliorative effect on L.D.'s credibility.  For example, at the *Daubert* hearing, Agent Landau acknowledged that sex

---

[3] Federal Rule of Evidence 403 states as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

trafficking victims frequently lie to law enforcement officers. This testimony could actually bolster Mr. Atkins' argument that L.D. was trafficked by someone else (as opposed to Mr. Atkins) or that L.D. was operating on her own. Agent Landau also described sex trafficking in ways that did not always neatly align with L.D.'s version of the facts. Finally, a competent cross-examination will of course bring out that Agent Landau has no idea if L.D. is lying and could not possibly know.[4]

For the forgoing reasons, Mr. Atkins' Motion to Exclude Government's Expert Trial Testimony is DENIED.

IT IS SO ORDERED this 2nd day of September 2020.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[4] In a somewhat similar case where a defendant argued that expert testimony about the business and jargon of sex trafficking would be more prejudicial than probative, the Eighth Circuit held that the district court did not abuse its discretion in allowing such testimony. *United States v. Washington*, 810 F. App'x 478, 481 (8th Cir. 2020).